```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X
BROOK BEVERAGE, INC.,                        :
                                             :   20-cv-9275 (VSB)
                                             :
            Plaintiff,                       :
                                             :   Removed from:
      -- against --                          :
                                             :   Supreme Court of the State of New York
PEPSI-COLA BOTTLING                          :   County of Nassau: Index No. 612398/2020
COMPANY OF NEW YORK INC.,                    :
                                             :
            Defendant.                       :
---------------------------------------------X
```

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR REMAND

 

        **STEVEN COHN, P.C.**
        Attorneys for Plaintiff Brook Beverage, Inc.
        One Old Country Road, Suite 420
        Carle Place, NY 11514
        (516) 294-6410

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ………………………………………………………...1

BACKGROUND…………………………………………………………………………………2

ARGUMENT……………………………………………………………………………………..8

    I.      Remand is appropriate under 28 U.S.C. § 1447(e)……………………………….8

    II.     Remand is appropriate in the Court's discretion to abstain from hearing
           Brook Beverage's First Cause of Action for a declaratory judgment……………11

CONCLUSION……………………………………………………………………………… 15

# **TABLE OF AUTHORITIES**

**Page**

**Cases**:

*Amusement Industry, Inc. v. Stern*,
    693 F.Supp.2d 301 (S.D.N.Y. 2010)……………………………………………….…14

*Brillhart v. Excess Ins. Co.*,
    316 U.S. 491 (1942)………………………………………………......................11, 13

*Colorado River Water Construction District v. United States*,
    424 U.S. 800 (1976)……………………………………………………………….....11

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
    346 F.3d 357 (2nd Cir. 2003)……………………………………………………..12-14

*Gissim, Inc. v. Scottsdale Insurance Company,*
    2016 WL 7413488 (E.D.N.Y.)………………………………………………………...11

*In re The Thomas and Agnes Carvel Foundation,*
    36 F.Supp.2d 144 (S.D.N.Y. 1999)……………………………………………………12

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
    2011 WL 5245192 (S.D.N.Y.)……………………………………………………...13

*Koch v. Progressive Insurance Co.*,
    2020 WL 33628 (E.D. Pa.)……………………………………………………………11

*Lafarge Canada, Inc. v. American Home Assurance Company*,
    2018 WL 1634135 (S.D.N.Y.)……………………………………………………...11

*Mensah v. World Truck Corp.*,
    210 F. Supp.2d 320 (S.D.N.Y. 2002)…………………………………………….9-11

*Morze v. Southland Corp.*,
    816 F. Supp. 369 (E.D. Pa. 1993)…………………………………………………10-11

*Reyes v. Rite-Line Transportation, Inc.*,
    2013 WL 3388975 (S.D.N.Y.)……………………………………………………...9-12

*Soros Management LLC v. TradeWinds Holdings, Inc.*,
    2018 WL 1276879 (S.D.N.Y. 2018)……………………………………………….…12

**Page**

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)…………………………………………………………………….12, 13

*XL Insurance America, Inc. v. Diamondrock Hospitality Co.*,
    414 F.Supp.3d 605 (S.D.N.Y. 2019)…………………………………………………….13-14

**Statutes:**

28 U.S.C. § 1447(e)……………………………………………………………………1, 8-10

28 U.S.C. § 2201…………………………………………………………………………..1, 11-13

**Page**

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)…………………………………………………………………….12, 13

*XL Insurance America, Inc. v. Diamondrock Hospitality Co.*,
    414 F.Supp.3d 605 (S.D.N.Y. 2019)…………………………………………………….13-14

**Statutes:**

28 U.S.C. § 1447(e)……………………………………………………………………1, 8-10

28 U.S.C. § 2201…………………………………………………………………………..1, 11-13

**PRELIMINARY STATEMENT**

Plaintiff Brook Beverage, Inc. ("Brook Beverage") respectfully submits this Memorandum in support of its motion for remand to the New York State Supreme Court (Nassau County), for consolidation with its pre-existing action against defendant Pepsi-Cola Bottling Company of New York, Inc. ("Pepsi") Index No. 608862/2019 (the "Pending State Action") pursuant to 28 U.S.C. § 1447(e) and by abstention under the Declaratory Judgment Act, 28 U.S.C. § 2201.

On November 5, 2020 Brook Beverage filed this action by Order to Show Cause in the Supreme Court's Commercial Division, seeking a Temporary Restraining Order ("TRO") barring Pepsi from unlawfully terminating the parties' beverage distributor agreement (the "Agreement") on stated grounds which do not appear in the Agreement. Its motion papers identified the Pending State Action as a related case, in anticipation of consolidating both cases in the same Commercial Part. The next day Pepsi removed this action to Federal court, blocking the TRO application from being heard, preventing consolidation and keeping Brook Beverage at risk of termination.

Significantly, Pepsi had not removed the Pending State Action when faced a similar TRO application in June 2019, to prevent a threatened termination on other grounds. Its tactics are a classic example of Goliath trying to financially crush David through sheer resources, first by threatening an improper termination and then by forum-shopping, forcing Brook Beverage to make two extra motions in this Court: (i) this one for remand, and (ii) a separate application for a TRO barring Pepsi from terminating the Agreement pending decision as to remand.

Pertinent facts are set forth in the Moving Affidavit of Vincent Eliseo prior to removal ("Eliseo Aff't"). Copies of that Affidavit, the Complaint, and Brook Beverage's Request for Judicial Intervention identifying the Pending State Action as a related case are annexed as Exhibits A, B and C to the accompanying Declaration of Brook Beverage's Counsel ("Counsel Decl.").

1

**Background:**

Brook Beverage has been a licensed distributor of bottled soft-drink products bearing variations on the trade name "Pepsi" within a defined territory in the Bronx (the "Route") for more than fifty years. It was founded in 1968 by Vincent Eliseo's father, Joseph Eliseo, who passed away on July 10, 2020. At that time Mr. Eliseo was a ninety percent shareholder and the company's President, and Vincent Eliseo was a ten percent shareholder (Eliseo Aff't, ¶¶ 5-6).

Following Joseph Eliseo's death, Pepsi requested that Brook Beverage inform it as to the status of his shares and identity of counsel for his estate. At the time of its requests, however, Mr. Eliseo's family had not yet been able to resolve certain issues regarding the administration of his estate that would enable them to appoint a representative and hire counsel to represent the estate. These issues prevented Vincent Eliseo from providing the requested information (*Id*. at ¶ 7).

Despite the uncertainty as to the status of Joseph Eliseo's shares, Brook Beverage has continued to operate profitably (*Id*. at ¶ 8), inuring to the benefit of both parties (*Id*. at ¶¶ 31-32).

**Termination:**

Section 20 of the Agreement states the following procedure for termination for cause:

> If the Company shall determine that the Distributor's failure or refusal to comply with one or more of the terms of this agreement, including without limitation, the failure to serve outlets in the Territory in the manner set forth in Paragraph 3 and other Paragraphs of this agreement, is serious enough to warrant the action … then, and in any such event, the company may terminate this agreement by mailing to the Distributor by registered mail addressed to its last known address, a written notice terminating this agreement effective not less than thirty (30) days after the date of mailing the notice.

Agreement (Eliseo Aff't Exhibit B), at pp. 7-8.

By letter dated October 6, 2020 (the "Termination Letter"), Pepsi advised Mr. Eliseo that it would terminate the Agreement as of November 5th, 2020 unless certain conditions were met:

> Pepsi is unable to continue its business relationship with Brook Beverage without being informed of, and consulted regarding the future management of the distributorship. Pursuant to Section 16 of Brook Beverage's distributorship agreement, "[n]o sale or transfer of stock of Distributor shall be made without the written consent of the company ("Company"). Similarly, <u>to the extent the estate **plans** to sell or otherwise assign the distributorship as a whole</u>, Paragraph 16 states that such sale/assignment also requires Company approval, which "shall not be unreasonably withheld, is in writing and is executed on behalf of the Company by an officer thereof. Accordingly, <u>to the extent the estate **intends** to transfer</u> your father's shares of Brook Beverage or the entire distributorship to other(s), any such transfer would need to be approved by the Company in writing, in accordance with the Company's transfer process.
>
> PCNY requested the above information on two occasions, with no response. In the nearly three months since your father's loss, Brook Beverage has both ignored multiple requests from the Company and failed to explain or excuse its refusal to provide the necessary information regarding the disposition of his shares, despite being given ample and reasonable opportunity to do so. The requested information is necessary for the continuation of PCNY's business relationship with Brook Beverage. This repeated failure to engage in timely communication with Company representatives regarding the continuing operation of the distributorship, if not remedied, will be deemed cause to terminate the Brook Beverage distributor agreement.
>
> We understand that you have been named Executor of your father's estate. Accordingly, please be advised that, pursuant to Paragraph 20 of the parties' distributor agreement, unless Brook Beverage produces a qualified transferee by November 5, 2020, the Company intends to terminate its distributor agreement with Brook Beverage, effective that date, for failure to comply with the requirements of Paragraph 16 of that agreement. This correspondence shall therefore constitute 30 days' written notice of such termination, as required by Paragraph 20 of the parties' distributor agreement, unless Brook Beverage submits a qualified transferee whose application is either pending or has been approved by PCNY on or before November 5, 2020.

Termination Letter (Eliseo Aff't Exhibit A), at pp. 1-2 (emphasis added).

As set forth above, the Termination Letter is premised on Section 16 of the Agreement. However, that section does not contemplate any of Pepsi's stated grounds for termination. Therefore, Brook Beverage cannot be in breach, and Pepsi's stated grounds for threatening it with termination are invalid. Section 16 of the Agreement states as follows:

> So long as this Agreement is in effect, the Company shall accept any substitute agent produced by the Distributor to take over and service the Territory in place of the Distributor and shall approve the assignment of this agreement to enter into a new agreement for the balance of the term hereof in the form then in use by the Company, with such proposed party provided, it shall, to the satisfaction of the Company, meet the requirements of the Company as to character, ability, financial responsibility, and adequacy of equipment to discharge the obligations assumed by the Distributor hereunder. No approval of the transfer of the Territory shall be effective unless such approval, which approval shall not be unreasonably withheld, is in writing and is executed on behalf of the Company by an officer thereof. This agreement is a personal one on the part of the Distributor, and except as hereinabove provided, the agreement may not be assigned in whole or in part and none of the obligations herein provided to be performed by the Distributor may be delegated to any other party. No sale or transfer of stock of Distributor shall be made without the written consent of the Company. Upon the termination of this agreement, the mutual rights and obligations of the parties hereto shall cease and terminate and the Company shall be under no obligation to the Distributor and the Distributor shall have no right or interest in respect of the Territory or in any other respect whatsoever, except as herein expressly provided.

Agreement (Eliseo Aff't Exhibit B), at pp. 7-8.

**<u>No requirements in the event of a shareholder's death:</u>**

Section 16 of the Agreement is silent as to what must or must not happen in the event of a distributor's death. It does not require that his shares be sold, or that the distributor "produce a qualified transferee," as demanded in the Termination Letter – let alone on thirty days' notice. Nor does it require that the deceased shareholder's family notify Pepsi as to the appointment of an executor or representative, or retention of estate counsel.

Similarly, the Termination Letter speaks only to what *might* happen at some future date with regard to a *potential* sale of Joseph Eliseo's shares, not what is happening now:

>  (i)  "to the extent the estate *plans* to sell or otherwise assign the distributorship as a whole;" or
>
>  (ii)  "to the extent the estate *intends* to transfer [Joseph Eliseo's] shares of Brook Beverage or the entire distributorship to other(s)."

Termination Letter, at pg. 1 (pg. 3 above).

Accordingly, Vincent Eliseo's inability to answer Pepsi's questions about his father's estate or the status of his shares does not put Brook Beverage in breach of Section 16. Further, whether or Mr. Eliseo wishes to sell all or part of his father's shares, Pepsi has no right to require him to do so – let alone under threat of termination.

Plainly, Pepsi's position is that it does have the right to terminate Brook Beverage on the Termination Letter's stated grounds. The parties are thus in an actual, justiciable controversy as to the Termination Letter's enforceability. Given the letter's stated deadline, which has prompted this application, that controversy is ripe for adjudication. This is the basis for Brook Beverage's First Cause of Action for a declaration that Pepsi cannot terminate the Agreement on the grounds stated in the Termination Letter. See Verified Complaint in Pending State Action (Eliseo Aff't Exhibit C), at ¶¶ 21-24. Accordingly, if Brook Beverage prevails on that cause of action, it would also be entitled to a permanent injunction barring Pepsi from such a termination.

**Impossibility of compliance:**

Although Brook Beverage is not required to sell Mr. Eliseo's shares, Vincent Eliseo has made a diligent good faith effort to do so. As of the date of this application he has spoken with or inquired about the possibility of a sale to five potential buyers. For various reasons, only one has actually negotiated an agreement, and even he has indicated that he may withdraw his offer by reason of certain circumstances that Pepsi itself has created (Eliseo Aff't, ¶¶ 25-27).

By letter dated September 25, 2020 entitled "PCNY Transfer Application Process," with an attached Memorandum entitled "Requirements for a Suitable Purchase of Territory" (Eliseo Aff't Exhibit D) Pepsi notified all of its distributors of certain new requirements for the approval of any potential sale, which together with certain other conditions includes the following:

(i) no prospective purchaser who is currently a Pepsi distributor will be approved unless its territory is contiguous to the territory of the selling distributor;

(ii) *any* prospective purchaser must have an annual sales volume of at least 200,000 cases of product, and not more than 500,000 cases.

These arbitrary restrictions do not appear anywhere in the Agreement. Their combined effect is to artificially limit Brook Beverage's pool of potential buyers, even as Pepsi purports to insist upon a sale. Still, Brook Beverage has pursued a potential sale to Purcell Beverage Corp. and J. Wild Beverage Corp., the only two distributors whose territories that are contiguous to its Route. Pepsi has informed him that neither distributor is interested (Eliseo Aff't, ¶ 23).

This leaves either a distributor whose territory is not contiguous to Brook Beverage, or a "qualified" outside distributor. Mr. Eliseo has discussed a possible sale with a distributor whose sales volume meets Pepsi's requirement of 200,000-500,000 cases, but who is not contiguous to the Route. That idea has been rejected (*Id.* at ¶ 24).

As for outside distributors, Pepsi has again seen fit to impose arbitrary and extraordinary limiting conditions. Still, Mr. Eliseo recently reached an agreement in principle with a beverage distributor who has several years of experience in New York City, including the Bronx, at a level of sales volume that would meet Pepsi's requirements. That distributor is currently in the process of completing Pepsi's purchase application and has already performed his due diligence as to Brook Beverage's route, equipment and customers (*Id.* at ¶ 25).

6

Upon information and belief, however, Pepsi has struck again, letting it be known that it is in the process of renegotiating its master distributorship agreement with the Trade Association in which Brook Beverage is a member, and that a new agreement is not expected to be finalized for at least two months. Further upon information and belief, one of the terms being discussed would allow Pepsi to repurchase all or part of any distributor's route, upon demand. If such a condition is adopted, it would be unrealistic to expect *any* interested party to remain interested. Any prospective purchaser would be faced with buying a route for a fixed price per case based on the existence of certain high-volume accounts on the route, and then lose such accounts at Pepsi's whim at what is currently an undisclosed, and likely below-market price. Indeed, even if that condition is not adopted the mere fact that the agreement is in limbo means that an interested party cannot know for certain what he is buying, making a potential sale improbable (*Id*. at ¶¶ 26-27).

.   This environment has been created solely by Pepsi. Under the circumstances, Brook Beverage could not comply with the Termination Letter even if its demand for a sale were – *hypothetically* – part of Section 16 of the Agreement.  Regardless, if Pepsi is allowed to terminate the Agreement on the grounds stated in the Termination Letter, Brook Beverage will forfeit a successful distributorship cultivated over the course of five decades.

**Complaint in this action:**

Brook Beverage has pleaded two Causes of Action: (i) for a judicial declaration that the Termination Letter is unenforceable, and (ii) for a mandatory injunction barring Pepsi from terminating the Agreement on the grounds set forth in the Termination Letter (Complaint, Counsel Decl. Exhibit B, at ¶¶ 19-24, 25-32).  Neither of these claims involves a question of federal law.

**Pending State Action:**

Brook Beverage's Complaint in the Pending State Action (Counsel Decl. Exhibit D) had pleaded similar claims for declaratory and injunctive relief in connection with Pepsi's attempt to terminate the Agreement on unrelated grounds in May 2019. Brook Beverage has been operating under the protection of a Temporary Restraining Order issued upon the filing of the Pending State Action on June 28, 2019 (Counsel Decl. Exhibit E). The Docket Sheet in the Pending State Action, depicting all of the ensuing motion and trial practice, is reproduced as Exhibit F.

The Pending State Action was stayed by operation of law upon Joseph Eliseo's death. Brook Beverage had intended to request that the stay be lifted once its application for a TRO in this case was heard, so that the two cases could be consolidated. That request was postponed upon Pepsi's removal of this case. Brook Beverage intends to make it once this motion and its concurrent application for the TRO that was prevented from being heard last week have been filed.

## ARGUMENT

**I.     Remand is appropriate in the Court's under 28 U.S.C. § 1447(e).**

Ample precedent for remand exists in two decisions from this Court, and a third decisioin in another District on which they both relied. Relief was granted in all three cases under 28 U.S.C. § 1447(e), entitled Procedure After Removal, which states as follows:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

It is true that Brook Beverage is not seeking to destroy diversity jurisdiction by moving to join additional defendants, as contemplated in Section 1447(e).  However, this Court has twice expanded the scope of Section 1447(e) under similar circumstances, remanding to permit

consolidation with pending state court actions between the same parties in the interests of judicial economy and conservation of resources. Both cases are on point.

*Reyes v. Rite-Line Transportation, Inc.*, 2013 WL 3388975 (S.D.N.Y.), involved a personal injury claim arising from a motor vehicle collision, removed on the basis of diversity jurisdiction. The Court granted plaintiff Reyes' motion for remand, even though he was not seeking to frustrate diversity by joining other defendants as prescribed in Section 1447(e). The decision was based on a pending state court action by a passenger in Reyes' car in the collision. As here, the two actions had nearly identical facts, parties, legal issues, even attorneys. The Court's analysis in departing from a "strict application" of Section 1447(e) is instructive:

> [I]n weighing the interests and prejudices to each party involved, this matter and the Bronx Supreme Court action appear to share the same operative facts from the events of January 14, 2012, the same evidence such as the Police Accident Report, and involve the same parties and counsel. Absent remand, Plaintiff will most likely unnecessarily and simultaneously litigate identical facts in two jurisdictions, conduct two courses of discovery, and appear for multiple depositions. While Defendant's opposition that diversity jurisdiction has been established is duly noted and appreciated, remand seems especially appropriate here considering the real risk of inconsistent verdicts, inconsistent testimony, and the potential of the lack of congruity in the resolution of this conflict. Lastly, judicial economy weighs in favor of remand.

*Reyes*, at *4, citing *Mensah v. World Truck Corp.*, 210 F. Supp.2d 320 (S.D.N.Y. 2002).

*Mensah* also involved a motion for remand under 28 U.S.C. § 1447(e). As in *Reyes*, the removed action involved a motor vehicle accident. Also as in *Reyes,* two passengers in the plaintiff's vehicle had brought separate actions arising from the same incident in New York State court. As in *Reyes* – and as here – none of the actions involved issues of federal law.

After limited discovery in the removed action, defendant World Truck Corp. sought remand and consolidation with the state court actions for purposes of a joint trial (*Mensah*, 210

F.Supp.2d at 321). The Court granted remand even though the plaintiff had not sought to frustrate diversity with a motion to join non-diverse defendants, focusing on "the policy rationale behind section 1447(e)" (*Id.* at 322), rather than its plain language:

> 'Section 1447(e) compels the court to consider, whether *in the interests of justice*, a case should be remanded back to State court' … In an effort to avoid piecemeal litigation and the risk of inconsistent and contradictory results, the Court hereby finds that the interests of justice will be served by remanding this matter to the state court in which it was originally filed. As a result, all of the claims of the parties will be heard in one forum, reducing the risk of inconsistent results and allowing for a comprehensive resolution of this conflict. Additionally, both parties support remand to state court, a point which cannot be stressed enough. 'The most logical, economical and equitable approach is to determine the respective rights and liabilities of all relevant parties *inter se* in one proceeding.'

*Mensah*, 210 F.Supp.2d at 322, citing *Morze v. Southland Corp.*, 816 F. Supp. 369, 370 (E.D. Pa. 1993) (italics in original).

*Morze* (also cited in *Reyes*) likewise involved a removed action and parallel state court actions arising from the same operative facts. Citing the same factors on which this Court later relied in *Mensah* and *Reyes* – all of which are present here – the *Morze* court granted remand under Section 1447(e) despite the absence of a challenge to diversity jurisdiction:

> Ms. Morze has a potential cause of action against both Southland and Joseph Schmidt under Pennsylvania negligence law. The elements and facts relevant to each cause of action overlap considerably. *If each case is tried in a separate forum, duplicative testimony is probable*. In light of Joseph Schmidt's deposition testimony evidencing his potential liability for plaintiff's injuries as well as additional information obtained through discovery,[6] Ms. Morze's attempt to remand this case does not appear to be an attempt to "forum shop", *but rather an attempt to promote judicial economy and prevent duplicative litigation*.

10

*Morze*, 816 F. Supp. at 370 (italics added). Compare, *Gissim, Inc. v. Scottsdale Insurance Company,* 2016 WL 7413488 *2-3 (E.D.N.Y.) (distinguishing *Reyes, Mensah* and *Morze* in denying remand under Section 1441(e) for lack of a pending state court action).[1]

Remand is appropriate here for the same reasons it was granted in *Reyes, Mensah* and *Morze* (none of which involved federal law), but denied in *Gissim*. The Pending State Action and this case have the same parties, same witnesses, similar claims for declaratory and injunctive relief, same grounds for a Temporary Restraining Order, and as in *Reyes*, the same counsel.

Most importantly, both cases arise based on Pepsi's wrongful attempt to terminate the same Agreement. Judicial economy, conservation of resources, avoidance of inconsistent outcomes, and the interest of justice are equally at stake here.

**II.     Remand is appropriate in the Court's discretion to abstain from hearing Brook Beverage's First Cause of Action for a declaratory judgment.**

Additionally, the Court may abstain from ruling on Brook Beverage's First Cause of Action for declaratory relief, despite the presence of diversity jurisdiction. See *Lafarge Canada, Inc. v. American Home Assurance Company*, 2018 WL 1634135 * 4 (S.D.N.Y.) ("even when subject matter jurisdiction exists – a court may nevertheless decline to hear a declaratory judgment action in an exercise of discretion"). Upon Pepsi's removal of this case, Brook Beverage's claim for declaratory relief was superseded by the Declaratory Judgment Act, 28 U.S.C. § 2201:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

---

[1] *Morze* was cited this year for remand under 28 U.S.C. § 1441(e) on similar analysis, in *Koch v. Progressive Insurance Co.*, 2020 WL 33628 (E.D. Pa.): "Plaintiffs will undeniably be injured if this action proceeds in federal court, as [they] will be required to litigate two separate lawsuits in two separate court systems, even though all suits revolve around the same motor vehicle accident … Not only would Plaintiffs be required to expend additional resources pursuing this matter in two courts, but it also allows for the risk of conflicting decisions." *Koch*, at *3.

"Thus, by its express terms, the Declaratory Judgment Act 'vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action[.]'" *Soros Management LLC v. TradeWinds Holdings, Inc.*, 2018 WL 1276879 *2 (S.D.N.Y. 2018). Abstention in this context is governed by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), in which the Supreme Court held that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration" (515 U.S. at 288). Addressing situations like this one which involve a pending state court action, the Court held further:

> The District Court's decision to stay or dismiss a declaratory judgment action in deference to a parallel state court proceeding is governed by the discretionary standard set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), rather than the "exceptional circumstances" standard developed in *Colorado River Water Construction District v. United States*, 424 U.S. 800 (1976).

*Wilton* (*Id.*).

"Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 346 F.3d 357, 359 (2nd Cir. 2003). "Under *Wilton*, the relevant inquiry is whether a declaratory judgment issue can better be settled in a parallel state proceeding "presenting opportunity for ventilation of the same state law issues, with a presumption in favor of state adjudication." *In re The Thomas and Agnes Carvel Foundation,* 36 F.Supp.2d 144, 153 (S.D.N.Y. 1999).

These parameters plainly weigh in favor of abstention in this case. The District Courts commonly perform this analysis using five factors identified by the Second Circuit in *Dow Jones*:

12

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty ... (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata, (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court, and (5) whether there is a better or more effective remedy.

*Dow Jones*, 346 F.3d at 359.

All five factors weigh in favor of abstention. First, "a declaratory judgment action has "no useful purpose" when another proceeding will settle the claims at issue. Likewise, the declaratory judgment claim would not offer relief from uncertainty when the same issues are being litigated directly in another proceeding." *XL Insurance America, Inc. v. Diamondrock Hospitality Co.*, 414 F.Supp.3d 605, 611 (S.D.N.Y. 2019). Second, this Court's decision on the declaratory judgment claim one way or another would not finalize the entire controversy between Brook Beverage and Pepsi; which can only be accomplished by a decision addressing Pepsi's efforts in both actions to terminate the Distributor Agreement.

Third, Brook Beverage had filed an Order to Show Cause in the Pending State Action requesting a TRO one day before Pepsi removed the case to Federal court, where the criteria for relief under the Declaratory Judgement Act are similar to New York law. Pepsi's tactics were flagrant forum-shopping – i.e., "procedural fencing" – to avoid a rule in State court.

The fourth *Dow Jones* factor also favors abstention because duplicative actions involving the same state law issues would *prima facie* encroach on the state court, which is already weighing those issues in the Pending State Action. "[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."
*XL Insurance America,* 414 F.Supp.3d at 610. A declaratory judgment in this forum "would [thus]

13

undermine principles of federalism and comity by needlessly intruding on the state court's jurisdiction to resolve the dispute." *Soros*, at *4.

As for Factor No. 5, "there is a 'better or more effective remedy' than a declaratory judgment action - specifically, the underlying litigation itself." *Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 301, 312 (S.D.N.Y. 2010).

Accordingly, the *Dow Jones* analysis overwhelmingly supports discretionary abstention from Brook Beverage's First Cause of Action for declaratory relief. Since its Second Cause of Action for a mandatory injunction barring Pepsi from terminating the Agreement rises and falls with the outcome of the declaratory judgment claim, both causes of action should be remanded.

**No prejudice:**

The *Dow Jones* criteria do not include considerations of prejudice in the event of remand. Still, it bears mentioning that Pepsi would suffer no prejudice if this case is remanded. It has already appeared in the Pending State Action, participated in an evidentiary hearing, and engaged in considerable motion practice (Counsel Decl. Exhibit D). It remains bound by a June 28, 2019 Temporary Restraining Order in that case, barring it from terminating Brook Beverage on grounds unrelated to those which have prompted this action (Id. Exhibit C). That Order can only be vacated by the judge who issued it, so Pepsi must return to that forum in any event.

By contrast, the sum total of Pepsi's efforts to date in this case has been to staple a Notice of Removal to Brook Beverage's application for a TRO, and file it with a Rule 7.1 Statement.

Conversely, Brook Beverage faces all the risks of inconsistent outcomes and redundant testimony that compelled remand in *Reyes, Mensah* and *Morze*, not to mention the added expense. Unlike Pepsi, it does not have an unlimited war chest to litigate two cases in different forums. Pepsi's gamesmanship should not be indulged.

## **CONCLUSION**

Upon the foregoing authorities, Brook Beverage respectfully requests that this case be remanded to New York State Supreme Court for consolidation with the Pending State Action, with such other and further relief as the Court may deem just and proper – including an Order temporarily restraining Pepsi from terminating the parties' Distributor Agreement pending decision on this motion, as requested separately in its concurrent application for such relief.

Dated: Carle Place, NY
      November 10, 2020

                      **STEVEN COHN, P.C.**
                      Attorneys for plaintiff Brook Beverage, Inc.

                      By:    */s/ Jeffrey H. Weinberger*
                            **JEFFREY H. WEINBERGER**

                      One Old Country Road, Suite 420
                      Carle Place, NY 11514
                      (516) 294-6410