UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BROOK BEVERAGE, INC.,

                       Plaintiff,

          - against -

PEPSI-COLA BOTTLING COMPANY OF
NEW YORK, INC.

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20-cv-9275 (VSB)

Removed from:

Supreme Court of the State of
New York, County of Nassau:
Index No. 612398/2020

---

## DEFENDANT'S MEMORANDUM OF LAW

## IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER

## AND

## IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND FOR A STAY OF PROCEEDINGS PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C. §§ 1 *ET SEQ.*

---

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
Attorneys for Defendant

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INDEX OF EXHIBITS ............................................................................................... v

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................................... 3

    A.    The Parties ................................................................................................ 3

    B.    The Applicable Distributor Agreement ................................................... 3

    C.    The Distributor Agreement Attached to the Declaration of Vincent Eliseo ............ 6

    D.    The Agreement to Arbitrate ..................................................................... 6

    E.    Proceedings in Prior State Court Action ................................................. 7

    F.    Other Relevant Provisions from Distributor Agreement ........................ 8

    G.    The Parties' Underlying Dispute ............................................................. 9

ARGUMENT ............................................................................................................ 13

    I.    PLAINTIFF HAS NOT MET THE HIGH THRESHOLD FOR THE EXTRAORDINARY RELIEF OF A TEMPORARY RESTRAINING ORDER ........................................................................................................ 13

        A.    Plaintiff Cannot Show Irreparable Harm ......................................... 13

        B.    Plaintiff Cannot Demonstrate A Likelihood Of Success Or Serious Questions As To The Merits And The Balance Of Hardships In Its Favor ................................................................................................ 15

            i.    Plaintiff's Claims Cannot Succeed on the Merits ...................... 15

            ii.    The Balance of Equities Favors Defendant, not Plaintiff ......... 18

    II.    THIS COURT MUST COMPEL ARBITRATION AND STAY THIS ACTION BECAUSE ALL OF PLAINTIFF'S CLAIMS ARE EXPRESSLY COVERED BY THE ARBITRATION PROVISION IN THE FEBRUARY 2, 1999 DISTRIBUTOR AGREEMENT ............................. 20

        A.    Plaintiff Is Bound by the Arbitration Provision in the February 2, 1999 Distributor Agreement with Defendant ......................................... 21

B.    The February 2, 1999 Distributor Agreement Contains an Arbitration
      Provision that Encompasses Plaintiff's Claims of Breach of Contract............22

     1.   The Present Dispute Concerns the "Interpretation of Application of
          the Provisions" of the Distributor Agreement ............................................23

C.    The Court Should Stay the Matter ...................................................................25

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABAX Inc. v. Mason Tenders Dist. Council*,
  No. 05 Civ. 7136(WHP), 2005 WL 1962948 (S.D.N.Y. Aug. 17, 2005)................................13

*AIM Int'l Trading, LLC v. Valcucine SpA, IBI LLC*,
  181 F. Supp. 2d 384 (S.D.N.Y. 2002)..................................................................................20

*Air Eng'g Metal Trades Council v. ARO, Inc.*,
  307 F. Supp. 934 (E.D. Tenn. 1969) ....................................................................................24

*Ameriprise Fin. Servs., Inc. v. Beland*,
  672 F.3d 113 (2d Cir. 2011)..................................................................................................21

*Biocon Ltd. v. Abraxis Bioscience, Inc.*,
  16-civ-6894 (RMB), 2016 WL 5817002 (S.D.N.Y. Sept. 26, 2016).....................................14

*Brook Beverage, Inc. v. Pepsi-Cola Bottling Company of New York, Inc.*,
  Index No. 0608862/2019 ...........................................................................................2, 7, 18

*Bynum v. Maplebear, Inc.*,
  160 F. Supp. 3d 527 (E.D.N.Y. 2016) ..................................................................................25

*City of Johnstown v. Local 779 Johnstown Fire Fighters Ass'n*,
  43 A.D.2d 875 (N.Y. App. Div. 1974) ..................................................................................24

*Deltown Foods, Inc. v. Tropicana Prods, Inc.*,
  219 F. Supp. 887 (S.D.N.Y. 1963) .......................................................................................19

*Edwards v. Virgin Islands*,
  No. 1981/271, 1986 WL 1265351 (D.V.I. Feb. 28, 1986).....................................................24

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..........................................................................................................22

*Genesco v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)..................................................................................................22

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
  596 F.2d 70 (2d Cir. 1979)..............................................................................................13, 14

*Lanvin, Inc. v. Colonia, Inc.*,
  739 F. Supp. 182 (S.D.N.Y. 1990) .......................................................................................19

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................................................21, 22

*Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.*,
    152 A.D.2d 729 (N.Y. App. Div. 1989) ...........................................................14

*Porcelli v. JetSmarter, Inc.*,
    19 Civ. 2537 (PAE), 2019 WL 2371896 (S.D.N.Y. June 5, 2019) ........................25

*Preston v. Farmer*,
    552 U.S. 346 (2008).............................................................................................20

*Roso-Lino Bev. Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*,
    749 F.2d 124 (2d Cir. 1984)...........................................................................14, 19

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970)..............................................................................20

*Sharpe v. Great Lakes Steel Corp.*,
    9 F.R.D. 691 (S.D.N.Y. 1950) ............................................................................19

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)............................................................................................22

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)................................................................................................22

*Sterling v. Deutsche Bank Nat'l Trust Co.*,
    368 F. Supp. 3d 723 (S.D.N.Y. 2019)............................................................13, 18

*United Steelworkers of Am. v. Keystone Group*,
    No. 109 LC 10,550, 1985 WL 14179 (S.D. Ind. Apr. 19, 1985) ..........................24

*Vittoria Corp. v. N.Y. Hotel & Motel Trades Council*,
    30 F. Supp. 2d. 431 (S.D.N.Y. 1998)..................................................................22

*Windsor Cert. Sch. Dist. v. Windsor Teachers Ass'n*,
    75 A.D.2d 684 (N.Y. App. Div. 1980) ................................................................24

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
    694 F.3d 155 (2d Cir. 2012)................................................................................14

**Statutes**

9 U.S.C. § 3.........................................................................................................25

9 U.S.C. § 4.........................................................................................................21

28 U.S.C. § 2201..................................................................................................17

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* .......................................1, 3, 20, 22, 25

| | Exhibits to Declaration of Patrick G. Brady | |
|---|---|---|
| **Exhibit** | **Description** | **Page(s)** |
| Ex. A | Decision and Order, dated November 25, 2019, entered in *Brook Beverage, Inc. and Joseph V. Eliseo v. Pepsi-Cola Bottling Company of New York, Inc.*, Index No. 0608862/2019, in the Supreme Court of the State of New York, Nassau County ("Prior State Court Action") | 2, 6, 8, 18, 25 |
| Ex. B | Proposed Order to Show Cause with Temporary Restraining Order filed with the court on June 28, 2019 in the Prior State Court Action | 7, 18 |
| Ex. C | Verified Complaint filed with the court on June 28, 2019 in the Prior State Court Action | 7 |
| Ex. D | Affidavit of Danny Derretta filed with the court in the Prior State Court Action on July 12, 2019 | 8 |
| Ex. E | Excerpts from oral argument on June 28, 2019 on Brook Beverage's and Joseph Eliseo's application for a temporary restraining order in the Prior State Court Action | 16 |
| Ex. F | Order to Show Cause with Temporary Restraining Order entered by the court on June 28, 2019 in the Prior State Court Action | 15, 19 |
| Ex. G | PCNY's Notice of Cross-Motion to Compel Arbitration filed on July 12, 2019 in the Prior State Court Action | 8 |
| Ex. H | November 6, 2020 correspondence from Patrick Brady, Esq., to Jeffrey H. Weinberger, Esq., counsel for Brook Beverage | 12, 20 |
| | Exhibits to Declaration of Andrew GraBois | |
| **Exhibit** | **Description** | **Page(s)** |
| Ex. 1 | February 2, 1999 Distributor Agreement between Brook Beverage, Inc. and Joseph Eliseo and Pepsi-Cola Bottling Company of New York, Inc. | 3, 6, 9, 12, 14, 16, 17, 21, 22, 23, 24 |
| Ex. 2 | March 19, 2002 Agreement between Distributors Association and PCNY | 4, 5, 17 |
| Ex. 3 | February 4, 2008 Agreement amending Distributor Agreement | 5 |
| Ex. 4 | May 31, 2019 Termination Notice to Brook Beverage and Joseph Eliseo | 7 |
| Ex. 5 | August 14, 2020 Letter from Joseph Klinger, PCNY Senior Vice President, to Brook Beverage | 10, 18 |
| Ex. 6 | September 8, 2020 Letter from Joseph Klinger, PCNY Senior Vice President, to Brook Beverage | 10, 18 |
| Ex. 7 | October 6, 2020 Letter from Joseph Klinger, PCNY Senior Vice President, to Brook Beverage | 10, 11, 18 |
| | Exhibit to Declaration of Katie Weitzman | |
| **Exhibit** | **Description** | **Page(s)** |
| Ex. 1 | November 5, 2020 Email from Katie Weitzman to pac80@aol.com, attaching pro forma template | 11 |

## PRELIMINARY STATEMENT

Defendant Pepsi-Cola Bottling Company of New York, Inc. ("Defendant" or "PCNY") respectfully submits this memorandum of law: (1) in opposition to plaintiff Brook Beverage, Inc.'s ("Plaintiff" or "Brook Beverage") application for a Temporary Restraining Order prohibiting Defendant from terminating the parties' Distributor Agreement pursuant to an October 6, 2020 Notice of Proposed Termination; and (2) in support of Defendant's motion to compel arbitration and stay or dismiss this action based on the Distributor Agreement's arbitration provision and lack of subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

This action began after Plaintiff ignored repeated attempts by PCNY to ascertain who would be assuming control of the Brook Beverage soft drink distributorship following the untimely death of its 90 percent owner, Joseph Eliseo, in July 2020.  Because the parties' Distributor Agreement requires that *all* transfers of ownership be approved by PCNY, Defendant attempted to contact Brook Beverage twice, in writing, to determine the identity of the proposed recipient of Joseph Eliseo's shares.  This was particularly crucial because Vincent Eliseo, Joseph Eliseo's son and owner of the remaining 10 percent of Brook Beverage, is currently barred from PCNY's premises by court order as a result of his threat to "kill everyone" at PCNY's facility.  In order to ensure continuity of operations, PCNY needed to determine who would be replacing Joseph Eliseo as primary owner and operator of Brook Beverage.

When its first two letters went unanswered, PCNY sent the October 6, 2020 Notice of Proposed Termination, stating it would consider further failure to communicate with Company representatives cause for termination, and that if a qualified transfer application was not pending within 30 days, PCNY would proceed with termination, as permitted by the parties' Distributor

Agreement.  In response, Plaintiff filed an application for a TRO in state court, which Defendant removed.[1]

Plaintiff's tactic to circumvent the Distributor Agreement's arbitration process and delay by seeking a TRO is frivolous and should be denied.  Plaintiff cannot meet its burden of showing a likelihood of success on the merits of its claims, all of which are premised on a misstatement of the terms of the Distributor Agreement, which requires PCNY's approval of *all* transfers of ownership, including through inheritance.  Plaintiff also cannot establish irreparable harm, as any purported harm can be remedied with monetary damages.  Finally, Plaintiff cannot show a balance of equities in its favor, as it utterly neglects to mention that its current situation is entirely of its own making, by not responding to PCNY's three attempts to ascertain the future management of Brook Beverage, and by creating a situation where PCNY cannot do business with the sole remaining shareholder of Brook Beverage because of his prior threats.  Plaintiff's claims are therefore unlikely to succeed on the merits.

Regardless of the merits, however, Plaintiff should be compelled to arbitrate its claims in accordance with its agreement with Defendant to arbitrate any and all disputes related to the Distributor Agreement.  Plaintiff knows full well that it is contractually bound to arbitrate all claims related to the Distributor Agreement exclusively before the contract arbitrator.  In fact, in the same state court proceeding Plaintiff cites as a "related" case, the court held the Distributor Agreement "contractually requires all disputes to be submitted to Arbitration," and specifically referred that dispute, regarding attempted termination of the Distributor Agreement for fraudulent sales activities, to be resolved via arbitration.  (*See* Declaration of Patrick G. Brady ("Brady Decl.") ¶ 3, Ex. A, Nov. 25, 2019 Decision and Order in *Brook Beverage, Inc. v. Pepsi-Cola Bottling*

---

[1] Plaintiff's motion for remand is currently pending.  Defendant will oppose that motion.

Firm:51839147v1

*Company of New York, Inc.*, Index No. 0608862/2019, at 6-7.)  Because the Distributor Agreement is clear and unambiguous, the Federal Arbitration Act mandates that Plaintiff's claims be submitted to arbitration and this action be stayed or dismissed.

## STATEMENT OF RELEVANT FACTS

### A.    The Parties

Defendant is a soft drink bottling and distribution company engaged in business in New York City, Nassau, Suffolk, and Westchester Counties.  (Decl. of Andrew GraBois ¶ 5.)

Plaintiff Brook Beverage and the late Joseph Eliseo have entered into a Distributor Agreement, dated February 2, 1999, with Defendant to sell and distribute Pepsi products in a defined territory ("February 2, 1999 Distributor Agreement").  (*Id.* ¶ 6, Ex. 1.)  Upon information and belief, Plaintiff Brook Beverage was and still is a member of the New York Pepsi-Cola Distributors Association, Inc. ("Distributors Association"), a membership organization that, from time to time, is authorized to represent its members and negotiate on their behalf.  (*Id.* ¶ 7.)

### B.    The Applicable Distributor Agreement

The February 2, 1999 Distributor Agreement between Brook Beverage, Joseph Eliseo, (collectively, "Distributor") and Defendant contains a fully executed cover page and three agreements, attached as Exhibits A through C to Exhibit 1 of the GraBois Declaration.  (*Id.* ¶ 8, Ex. 1, signature page with Exhibits A – C attached thereto.)  Also included in the collection of agreements, but not identified as an Exhibit, is a Memorandum of Agreement, dated June 1, 1978 ("June 1, 1978 MOA"), which provides context for the agreements listed as Exhibits A through C. (*Id.*, Ex. 1 at Ex. A.)

The June 1, 1978 MOA, between Defendant's predecessor, the Pepsi-Cola Bottling Group ("PBG"), and the Distributors Association, is part of Exhibit A to the February 2, 1999 Distributor

Agreement.  (*Id.*, Ex. 1 at Ex. A.)  Paragraph Second of the June 1, 1978 MOA provides that the new form of the distributor agreement is "annexed as 'Appendix A' and designated Distributor Agreement."  (*Id.*, Ex. 1 at Ex. A, ¶ Second.)  "Appendix A" to the June 1, 1978 MOA is the same agreement designated as Exhibit A on the signature page for the February 2, 1999 Distributor Agreement, a form Distributor Agreement dated August 8, 1979 ("1979 Form Distributor Agreement").  (*Id.*, Ex. 1 at Ex. A.)  The 1979 Form Distributor Agreement attaches a description of Brook Beverage's distribution territory pursuant to Paragraph 1.  (*Id.*, Ex. 1 at Ex. A.)

Exhibit B to the February 2, 1999 Distributor Agreement is an agreement between the Distributors Association and New York Beverage Acquisition Corporation, now known as PCNY, dated July 28, 1984 ("1984 Agreement").  (*Id.*, Ex. 1, signature page, ¶ 2 and Ex. B.)  Paragraph Second of the 1984 Agreement extends the term of the 1979 Form Distributor Agreement "up to and including May 31, 2005."  (*Id.*, Ex. 1 at Ex. B, ¶ Second.)  Paragraph 1 of the signature page advises that Exhibit A, *i.e.* the 1979 Form Distributor Agreement, is amended by Exhibit B, "an Agreement entered into July 28, 1984 between New York Pepsi-Cola Distributor Association, Inc. and [PCNY]."  (*Id.*, Ex. 1, signature page, ¶ 1.)

Exhibit C to the February 2, 1999 Distributor Agreement is an agreement between the Distributors Association and Defendant, dated May 5, 1989, relating to beverage syrup.  (*Id.*, Ex. 1 at Ex. C.)

Subsequent to the execution of the February 2, 1999 Distributor Agreement, the Distributors Association and Defendant entered into an agreement, dated March 19, 2002 ("March 2002 Agreement"), extending the terms of the individual distributor agreements, including Plaintiff's and Joseph Eliseo's, that were set to expire on May 31, 2005.  (*Id.* ¶ 14, Ex. 2.)  Paragraph Second of the March 2002 Agreement provides that, with each successive day at

midnight, each distributor agreement extends for a term of five years.  (*Id.*, Ex. 2, ¶ Second.)  Upon ninety (90) days' notice, PCNY may "unilaterally void" this daily five-year renewal provision, in which case each agreement would expire at the end of the then-applicable five-year period.  (*Id.*, Ex. 2, ¶ Third.)  Plaintiff and Joseph Eliseo signed Schedule A to the March 2002 Agreement, consenting to the terms of that agreement.  (*Id.* ¶ 14 and Ex. 2, Schedule A.)

Effective February 4, 2008, the February 2, 1999 Distributor Agreement was amended to address the commissions paid to distributors ("February 2008 Agreement").  (*Id.*, ¶ 16, Ex. 3.) Plaintiff and Joseph Eliseo consented to the amendments in the February 2008 Agreement.  (*Id.*, Ex. 3.)

The entire Distributor Agreement between Brook Beverage, the late Joseph Eliseo, and PCNY that was in effect on October 6, 2020 consists of the following: the February 2, 1999 Distributor Agreement (with attached Exhibits A through C and the June 1, 1978 MOA); the March 2002 Agreement; and the February 2008 Agreement.  (*Id.* ¶ 17, Exs. 1 through 3.)

The Distributor Agreement that was in effect on October 6, 2020 includes both the 1984 Agreement (Exhibit B to the February 2, 1999 Distributor Agreement) and the 1979 Form Distributor Agreement (Exhibit A to the February 2, 1999 Distributor Agreement).  (*Id.* ¶ 18, Ex. 1 at Exs. A and B.)  The 1984 Agreement amends extensively the terms of the 1979 Form Distributor Agreement.  (*Id.*, Ex. 1, signature page, ¶ 1.)  Of immediate relevance to Defendant's Motion to Compel Arbitration is Paragraph Eighth of the 1984 Agreement, which amends Paragraph 22, (titled, "Settlement of Disputes") of the 1979 Form Agreement (see section D, *infra*).

C.      **The Distributor Agreement Attached to the Declaration of Vincent Eliseo**

The "Distributor Agreement" attached as Exhibit B to Exhibit A (ECF No. 13-1) of the

Declaration of Vincent Eliseo (ECF No. 13) is not the operative agreement in this matter.  The

Distributor Agreement attached as Exhibit B to Exhibit A of Vincent Eliseo's Declaration consists

of a form Distributor Agreement, which is redacted, undated, and unsigned, and the same 1984

Agreement included as Exhibit B to Plaintiff and Joseph Eliseo's February 2, 1999 Distributor

Agreement.  (GraBois Decl. ¶ 20; *compare* 1984 Agreement attached as Ex. B to Ex. A to Eliseo

Aff. *with* Ex. B to Ex. 1 to GraBois Decl.)

D.      **The Agreement to Arbitrate**

Paragraph Eighth of the 1984 Agreement amends Paragraph 22 of the 1979 Form

Distributor Agreement ("Settlement of Disputes"), and provides as follows:

> Any and all disputes or disagreements between the Company and the Distributor
> concerning the interpretation of application of the provisions of this Agreement,
> shall be determined in arbitration before Mr. William J. Glinsman, and judgment
> upon the award rendered by the said Arbitrator may be entered in any Court having
> jurisdiction.  In the event of the failure of Mr. Glinsman to act as Arbitrator for
> whatever reason, the person then acting as Arbitrator under the then collective
> bargaining agreement between the Company and the Soft Drink Workers Union,
> Local 812 I.B.T., shall act as his replacement until such time as the parties hereto
> shall designate in writing a substitute arbitrator for Mr. Glinsman.  In no event shall
> the Arbitrator have the power to alter or amend the terms of this Agreement.

(GraBois Decl., Ex. 1 at Ex. B, ¶ Eighth (emphasis added).)

Defendant, the Distributors Association, and individual distributors have historically

arbitrated disputes and disagreements under Paragraph Eighth of the 1984 Agreement.  (*Id.* ¶ 19.)

As discussed further herein, a prior dispute filed in New York State Supreme Court, Nassau

County, over the May 31, 2019 termination of Plaintiff's and Joseph Eliseo's February 2, 1999

Distributor Agreement, which Plaintiff Brook Beverage describes as a "related case," was ordered

to arbitration based on Paragraph Eighth of the 1984 Agreement.  (*See* Brady Decl. ¶ 3, Ex. A,

Nov. 25, 2019 Decision and Order in *Brook Beverage, Inc. v. Pepsi-Cola Bottling Company of New York, Inc.*, Index No. 0608862/2019, at 6-7.)

###### E.    Proceedings in Prior State Court Action

On June 28, 2019, Brook Beverage and Joseph Eliseo filed an application for an order to show cause and temporary restraints against Defendant in New York State Supreme Court, Nassau County, and sought to restrain Defendant from terminating Brook Beverage's and Joseph Eliseo's distributorship on June 30, 2019, pursuant to a May 31, 2019 termination notice ("May 2019 Termination Notice").  (Brady Decl. ¶ 4, Ex. B, Proposed Order to Show Cause with Temporary Restraining Order.)  Brook Beverage and Joseph Eliseo also filed a Verified Complaint seeking: (i) a judicial declaration that the parties' Distributor Agreement "may not be terminated according to its own plain language"; (ii) "a preliminary injunction (with Temporary Restraining Order) barring [PCNY] from terminating the distributorship under an unlawful notice of termination"; and (iii) "specific performance" of an alleged right under the contract to a "reasonable cure period." (*Id.*, Ex. C, Verified Compl. ¶¶ 2, 15-34.)

In the May 2019 Termination Notice, which was attached to an Affidavit of Joseph Eliseo in support of the application, Defendant advised Brook Beverage and Joseph Eliseo that Brook Beverage violated the Distributor Agreement "when it: (1) falsified records and fraudulently claimed product was sold to a customer to gain higher promotional dollar proceeds; (2) improperly post-voided [PCNY] invoices; and (3) sold products to unauthorized third parties." (GraBois Decl. ¶ 28, Ex. 4, May 2019 Termination Notice.)  On the same day the May 2019 Termination Notice was issued, during a meeting between PCNY and Brook Beverage, Vincent Eliseo allegedly became "very upset and angry about what appeared to be the impending termination of the Brook Beverage, Inc. distribution agreement.  At one point, he said words to the effect that he would

return to [PCNY's] Brush Avenue facility to kill everyone."  (Brady Decl. ¶ 6, Ex. D, Affidavit of Danny Darretta.)

During Brook Beverage's and Joseph Eliseo's appearance in connection with the application for a temporary restraining order, counsel for Brook Beverage and Joseph Eliseo advised the court that his client was "locked out of his office," and requested that the temporary restraining order permit his client to access the office.  (*Id.* ¶ 7, Ex. E, June 28, 2019 Oral Argument Tr. 6:7-7:2.)  Counsel for PCNY informed the court that Joseph Eliseo's son, Vincent Eliseo, threatened to come in and shoot up the office.  (*Id.*, 7:8-19.)  As a result, the court precluded Vincent Eliseo from accessing the office premises.  (*Id.*, 7:24-9:15; *see also id.* ¶ 8, Ex. F, Order to Show Cause With Temporary Restraining Order, dated June 28, 2019.)

On July 12, 2019, PCNY moved to compel arbitration of Brook Beverage and Joseph Eliseo's claims.  (Brady Decl. ¶ 9, Ex. G, Notice of Cross-Motion to Compel Arbitration.)  As previously noted, the court held that the Distributor Agreement "contractually requires all disputes to be submitted to Arbitration." (*See id.* ¶ 3, Ex. A, at 6.)  The restraining order entered by the court on June 28, 2019, barring Vincent Eliseo, the sole surviving shareholder of Brook Beverage, from PCNY's premises, remains in effect.  (*See id.* ¶ 3, Ex. A, at 7; *id.* ¶ 8, Ex. F.)

### F.    Other Relevant Provisions from Distributor Agreement

Paragraph 16 of the 1979 Form Distributor Agreement, titled "Transfers," provides:

So long as this agreement is in effect, the Company shall accept any substitute agent produced by the Distributor to take over and service the Territory in place of the Distributor and shall approve the assignment of this agreement to enter into a new agreement for the balance of the term hereof in the form then in use by the Company, with such proposed part provided, he or it shall, to the satisfaction of the Company, meet the requirements of the Company as to character, ability, financial responsibility, and adequacy of equipment to discharge the obligations assumed by the Distributor hereunder.  No approval of the transfer of the Territory shall be effective unless such approval, which approval shall not be unreasonably withheld, is in writing and is executed on behalf of the Company by an officer thereof.  This

<u>agreement is a personal one on the part of the Distributor, and except as hereinabove provided, the agreement may not be assigned in whole or in part and none of the obligations herein provided to be performed by the Distributor may be delegated to any other person.</u>  No sale or transfer of stock of Distributor shall be made without the written consent of the Company.  Upon the termination of this agreement, the mutual rights and obligations of the parties hereto shall cease and terminate and the Company shall be under no obligation to the Distributor and the Distributor shall have no right or interest in respect of the Territory or in any other respect whatsoever, except as herein expressly provided.

(GraBois Decl. ¶ 8, Ex. 1 at Ex. A, ¶ 16 (emphasis added).)

Paragraph 20 of the 1979 Form Distributor Agreement, titled "Termination by the Company," states:

If the Company shall determine that the Distributor's failure or refusal to comply with one or more of the terms of this agreement, including without limitation, the failure to serve outlets in the Territory in the manner set forth in Paragraph 3 and other paragraphs of this agreement, is serious enough to warrant the action or if the Distributor is convicted of a felony, or if the Distributor becomes insolvent, makes an assignment for the benefit of creditors, or if a trustee or receiver of the property or business of the Distributor is appointed, files or has filed against it a petition in Bankruptcy Act, suffers entry of any judgment against it which is not discharged, stayed or bonded of record within thirty (30) days, then, and in any such event, the Company may terminate this agreement by mailing to the Distributor by registered mail addressed to his or its last known address, a written notice terminating this agreement effective not less than thirty (30) days after the date of mailing the notice.  Before issuing any such termination notice, as hereinabove provided in Paragraph 20, the Company shall give the Distributor reasonable opportunity to explain and excuse such failure or refusal.  The failure of the Company to exercise any right or to act in respect of any breach hereunder by the Distributor shall not constitute a waiver of such right or breach, as the case may be.  Nothing herein contained shall amount to a waiver of any right or remedy which the Company shall have at law or in equity in respect of any of the terms of this agreement or the performance of the Distributor hereunder.

(*Id.*, Ex. 1 at Ex. A, ¶ 20.)

## G.      The Parties' Underlying Dispute

On July 10, 2020, Joseph Eliseo passed away.  (Eliseo Aff. ¶ 6, ECF No. 13-1.)  He was Plaintiff's ninety percent (90%) shareholder.  (*Id.*)  The remaining ten percent (10%) is owned by

Joseph Eliseo's son, Vincent Eliseo.  (*Id.* ¶ 6.)  Vincent Eliseo is the executor of Joseph Eliseo's estate.  (GraBois Decl. ¶ 31.)

On August 14, 2020, Defendant sent a letter to Plaintiff Brook Beverage and its Manager Maria Eliseo, in care of Brook Beverage counsel, Jeffrey H. Weinberger, Esq., requesting that Plaintiff provide the following information to Defendant: (1) the identity and contact information of the executor of Joseph Eliseo's estate (or administrator in case of an intestacy); (2) the identity and contact information of the beneficiary of Joseph Eliseo's shares in Brook Beverage; and (3) the identity and contact information for counsel to the estate, if any.  (GraBois Decl. ¶ 29, Ex. 5.) The August 14, 2020 letter also reminded Plaintiff that Defendant must approve any sale or transfer of stock of Brook Beverage, pursuant to Paragraph 16 of the Distributor Agreement.  (*Id.*)

No response was received to the August 14, 2020 letter.  Defendant sent Plaintiff Brook Beverage another letter on September 8, 2020, in an attempt to resolve the matters concerning the status of Brook Beverage.  (*Id.* ¶ 30, Ex. 6.)  Defendant requested the same information as the August 14, 2020 letter, and asked that it be provided to Defendant by September 21, 2020.  (*Id.*)

No response was received to the September 8, 2020 letter.  On or about October 5, 2020, Jeffrey H. Weinberger, counsel for Brook Beverage, contacted Andrew GraBois, Vice President and Senior Corporate Counsel for PCNY, and advised that Vincent Eliseo is the executor of Joseph Eliseo's estate, but Mr. Weinberger did not have any further information about the estate at that time.  (*Id.* ¶ 31.)

On October 6, 2020, Defendant sent a "Notice of Proposed Termination of Distributor Agreement" ("October 2020 Termination Notice") to Plaintiff and Vincent Eliseo, who PCNY believed is the executor of the Joseph Eliseo estate.  (*Id.* ¶ 32, Ex. 7.)  The October 2020 Termination Notice informed Vincent Eliseo that Plaintiff had failed to respond to Defendant's

August 14 and September 8, 2020 correspondence, or provide the information requested therein. (*Id.*, Ex. 7 at 1.)  Defendant advised Plaintiff that it would terminate Plaintiff's Distributor Agreement if Plaintiff did not produce a qualified transferee for Joseph Eliseo's shares of Brook Beverage's distributorship.  (*Id.*, Ex. 7 at 2.)  Defendant attached to the letter a September 25, <u>2019</u> letter to Defendant's distributors which detailed the process for transferring ownership of a distributorship, including a summary of requirements for a suitable purchaser of a distributorship. (*Id.*, Ex. 7, Exhibit A to attachment.)

In or around October 2020, Director, Corporate Counsel for PCNY, Katie Weitzman, attempted to facilitate a sale of Brook Beverage's territory after communicating with a potential buyer.  (Declaration of Katie Weitzman ("Weitzman Decl.") ¶ 4.)  Ms. Weitzman sent a PCNY Transfer Application, which must be completed by both Brook Beverage and the buyer, to both parties on October 28, 2020.  (*Id.*).  While the purchaser has submitted many of the necessary documents, the purchaser has been unable to submit a completed application because he has not yet received all of the necessary documentation from Plaintiff's counsel.  (*Id.* ¶¶ 5-8, Ex. 1.)

On November 4, 2020, Plaintiff applied for an order to show cause and temporary restraints against Defendant in New York State Supreme Court, Nassau County ("State Court Action"). (Notice of Removal, Ex. A, ECF No. 1-1.)  Along with the order to show cause, Plaintiff filed a Verified Complaint pleading two causes of action against Defendant: (1) a declaratory judgment that Defendant may not terminate Plaintiff's Distributor Agreement on November 5, 2020 (or thereafter) on the grounds stated in the October 6, 2020 Termination Notice; and (2) a preliminary/permanent injunction barring Defendant from terminating the Distributor Agreement pursuant to Defendant's October 6, 2020 Termination Notice, pending adjudication of Plaintiff's request for a judicial declaration.  (*Id.*, Verified Compl. ¶¶ 19-32.)

On November 5, 2020, Defendant removed Plaintiff's action to this Court, based on diversity jurisdiction.  (Notice of Removal ¶ 3, ECF No. 1.)

On November 6, 2020, counsel for PCNY advised Jeffrey Weinberger, Esq., counsel for Brook Beverage, that on November 5, 2020, PCNY was contacted by a potential buyer, known to Brook Beverage, who previously requested an application to purchase Brook Beverage's territory. (Brady Decl. ¶ 10, Ex. H.)  Counsel for PCNY further stated that Brook Beverage should "advise the potential buyer to complete the application forthwith.  Otherwise, PCNY will take action as set forth in its Notice of Termination."  (*Id.*)  To date, PCNY has not terminated the Brook Beverage Distributor Agreement.  (GraBois Decl. ¶ 33.)

On November 12, 2020, Plaintiff applied to this Court for an order to show cause and temporary restraints against Defendant, seeking the same relief as in the State Court Action.  (*See* ECF Nos. 10 – 13-1.)  On November 13, 2020, this Court directed that Defendant submit its opposition by November 17, 2020 to Plaintiff's request for a temporary restraining order.  (ECF No. 14.)

Defendant respectfully requests that this Court deny Plaintiff's application for a temporary restraining order.  Further, as the bases for Plaintiff's order to show cause and verified complaint relate to the aforementioned contractual disputes, Defendant moves this Court for an order compelling arbitration of these contractual issues pursuant to Paragraph 22, as amended by Paragraph Eighth of the 1984 Agreement, which is attached as Exhibit B to the February 2, 1999 Distributor Agreement, and for a stay of these proceedings (GraBois Decl. Ex B to Ex. 1).

**ARGUMENT**

I.     **PLAINTIFF HAS NOT MET THE HIGH THRESHOLD FOR THE EXTRAORDINARY RELIEF OF A TEMPORARY RESTRAINING ORDER**

A TRO is "an extraordinary and drastic remedy," which should be granted only when the movant has demonstrated a clear right to such relief.  *Sterling v. Deutsche Bank Nat'l Trust Co.*, 368 F. Supp. 3d 723, 727 (S.D.N.Y.  2019) (quoting *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007)) (referring to preliminary injunctions, but noting "[t]he standard[s] for granting a temporary restraining order and a preliminary injunction . . . are identical").  In order for the Court to grant this drastic remedy, Plaintiff bears the heavy burden of demonstrating that: (1) it will suffer irreparable harm absent injunctive relief; and (2) either (a) it is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips decidedly in its favor.  *See id.*  Plaintiff cannot establish any of the prerequisites to the relief it seeks.

A.     **Plaintiff Cannot Show Irreparable Harm**

"A showing of probable irreparable harm is 'the single most important prerequisite' for the issuance of a temporary restraining order and therefore, 'a moving party must first demonstrate that such injury is likely before the other requirements . . . will be considered."  *ABAX Inc. v. Mason Tenders Dist. Council*, No. 05 Civ. 7136(WHP), 2005 WL 1962948, at *1 (S.D.N.Y. Aug. 17, 2005) (quoting *Reuters Ltd. v. UPI, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). Irreparable harm must be "likely" and "imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages."  *Id.* (citation omitted).  "[W]here money damages is adequate compensation a [temporary restraining order] will not issue."  *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

Where, as here, "the alleged harm is the loss of customers and business as a result of a breached agreement for an exclusive distributorship, that harm is compensable with money damages." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 161 (2d Cir. 2012). "This is because 'lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product.'" *Biocon Ltd. v. Abraxis Bioscience, Inc.*, 16-civ-6894 (RMB), 2016 WL 5817002, at *8-9 (S.D.N.Y. Sept. 26, 2016) (citation omitted). That is particularly true here, because Defendant has the express right to terminate Plaintiff's Distributor Agreement upon 30 days' notice, following a breach of such agreement. (GraBois Decl. Ex. 1 at Ex. A, ¶ 20.)

Courts have rejected Plaintiff's argument that alleged loss of goodwill and the potential destruction of their business constitute irreparable injury. In one such case, the plaintiff alleged that defendant supplier's elimination of plaintiff's two largest customers, grocery store chains with 14 stores in plaintiff's territory, would destroy the entire route. The Second Circuit held that, even where the alleged harm would "mak[e] the entire route unprofitable and require[e] its cancellation," such harm would "be rather readily compensable in monetary damages," rendering injunctive relief inappropriate. *Jackson Dairy, Inc.*, 596 F.2d at 72-73. Because, as in *Jackson Dairy*, monetary damages in this case are both readily calculable and sufficient, Plaintiff cannot demonstrate irreparable harm, and a TRO is inappropriate.

As discussed further *infra*, the cases Plaintiff cites are inapposite. In *Roso-Lino Bev. Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 126 (2d Cir. 1984), the court noted, "[i]t is unlikely that Coca-Cola will suffer greatly if the eleven-year relationship is continued for a short while." Similarly, in *Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.*, 152 A.D.2d 729, 730 (N.Y. App. Div. 1989), the court granted a preliminary injunction because

14

defendant would "suffer no great hardship as a result of its issuance," or "even be inconvenienced." Such is not the case here, where Plaintiff has already ignored three communications from Defendant, and refused to identify who is in charge of Plaintiff's operations since Joseph Eliseo's death over four months ago, a consideration which is crucial since Plaintiff's sole surviving shareholder is currently barred from PCNY's premises by court order after threatening workplace violence.  (Brady Decl. Ex. F, June 28, 2019 Order to Show Cause with Temporary Restraining Order.)  Plaintiff is therefore not similarly situated to the plaintiffs in the cases it cited.

**B.      Plaintiff Cannot Demonstrate A Likelihood Of Success Or Serious Questions As To The Merits And The Balance Of Hardships In Its Favor**

**i.      Plaintiff's Claims Cannot Succeed on the Merits**

Plaintiff disingenuously asserts that the parties' Distributor Agreement "does not require that [Joseph Eliseo's] shares be sold, or that the distributor 'produce a qualified transferee,' as demanded in the Termination letter," and states that its claim for a declaratory judgment must therefore succeed.  (Pl's Brief at 13.)  While the Distributor Agreement does not specifically address the death of a distributor, Paragraph 16 ("Transfers") covers *all* circumstances in which ownership of a distributor's shares are to be transferred from one individual to another, and provides in its entirety:

> So long as this agreement is in effect, the Company shall accept any substitute agent produced by the Distributor to take over and service the Territory in place of the Distributor and shall approve the assignment of this agreement to enter into a new agreement for the balance of the term hereof in the form then in use by the Company, with such proposed party provided, he or it shall, to the satisfaction of the Company, meet the requirements of the Company as to character, ability, financial responsibility, and adequacy of equipment to discharge the obligations assumed by the Distributor hereunder.  No approval of the transfer of the Territory shall be effective unless such approval, which approval shall not be unreasonably withheld, is in writing and is executed on behalf of the Company by an officer thereof.  This agreement is a personal one on the part of the Distributor, and except as hereinabove provided, the agreement obligations herein provided to be performed by the Distributor may not be assigned in whole or in part and none of the obligations herein provided to be performed by the Distributor may be delegated

<u>to any other person.  No sale or transfer of stock of Distributor shall be made
without the written consent of the Company.</u>  Upon the termination of this
agreement, the mutual rights and obligations of the parties hereto shall cease and
terminate and the Company shall be under no obligation to the Distributor and the
Distributor shall have no right or interest in respect of the Territory or in any other
respect whatsoever, except as herein expressly provided.

(GraBois Decl. Ex. 1 at Ex. A, ¶ 16 (emphasis added).)

Because, following his death, Joseph Eliseo no longer owns his 90 percent of Brook
Beverage, by definition that portion of the distributorship must be either transferred or sold to
someone else.  The express language of the Distributor Agreement requires that Brook Beverage
obtain PCNY's approval regarding such sale or transfer.  (*See id.*)  Notably, the Distributor
Agreement does not include an exception for transfers that occur as a result of inheritance, so
Plaintiff's apparent belief that Joseph Eliseo's shares can simply be passed on to his beneficiaries
without Defendant's approval is incorrect.  (*See* Eliseo Aff. ¶ 16, ECF No. 13-1.)  In this case, in
particular, PCNY would likely object to such a transfer via inheritance, given that Joseph Eliseo's
executor and the sole surviving shareholder of Brook Beverage, Vincent Eliseo, is currently barred
from PCNY's premises by court order,.  (Brady Decl. Ex. E, June 28, 2019 Oral Argument Tr.
7:8-9:15; *see also id.,* Ex. F, June 28, 2019 Order to Show Cause With Temporary Restraining
Order.)

PCNY made multiple efforts over a period of several months to ascertain who would be
operating Brook Beverage in the absence of Joseph Eliseo.  Plaintiff refused to respond to
Defendant's repeated inquiries, and made no effort to provide the requested information until
PCNY was left with no choice but to threaten termination of the Distributor Agreement.  For
continuity of its business operations, Defendant must know who is operating Plaintiff's
distributorship, and because it is a personal services contract "the agreement may not be assigned
in whole or in part and none of the obligations herein provided to be performed by the Distributor

16

may be delegated to any other party." (GraBois Decl. Ex. 1 at Ex. A, ¶ 16.) The Distributor Agreement gives PCNY the right to decline proposed distributors who do not meet the Company's requirements. (*Id.*) Therefore, Plaintiff's contention that it can ignore repeated communications from PCNY and proceed indefinitely without complying with the Distributor Agreement's transfer provision is incorrect.[2]

Further, Plaintiff's claim that it must prevail under the Declaratory Judgment Act, 28 U.S.C. § 2201, if such a judgment would "clarify" the legal relations at issue and relieve the parties' "uncertainty," is unavailing. (Pl's Brief at 13.) There is no such "uncertainty" or need for "clarification." The parties' Distributor Agreement contains an arbitration clause that requires "[a]ny and all disputes or disagreements between the Company and the Distributor concerning the interpretation of application of the provisions of this Agreement" to be "determined in arbitration." (GraBois Decl. Ex. 1 at Ex. A, ¶ Eighth.) Plaintiff is well aware that the instant dispute must be arbitrated, because in the state court case that Plaintiff purportedly claims is "related," the court

---

[2] Plaintiff's assertion that PCNY has made it "impossible to comply" with Defendant's request is also incorrect. (Pl's Brief at 5-7.) Plaintiff claims PCNY included with the October 6, 2020 Notice of Proposed Termination a "letter dated September 25, 2020" imposing "arbitrary restrictions" on transfers that "do not appear anywhere in the Agreement." This is false. The letter, which was actually dated September 25, 2019, was originally sent to all distributors to provide guidance as to the factors PCNY would use to evaluate transfer applications under Paragraph 16 of the Distributor Agreement (*i.e.,* "the requirements of the Company as to character, ability, financial responsibility, and adequacy of equipment to discharge the obligations assumed by the Distributor"). A second copy was included with the October 6, 2020 Notice of Proposed Termination for Plaintiff's convenience. Further, Vincent Eliseo's unsupported hearsay about any potential changes that may or may not be under consideration to any agreement between PCNY and the Distributor's Association (Eliseo Aff. ¶¶26-27) is irrelevant, because any transferee would take over Brook Beverage's agreement for the balance of its term (GraBois Decl. Ex. 1 at Ex. A, ¶16), and the Distributor Agreement has *always* provided PCNY the right to terminate it upon five years' notice. (*Id.*, Ex. 2 ¶ Third (upon 90 days' notice, PCNY may "unilaterally void" the Distributor Agreement's so-called "evergreen provision" that "each Agreement shall at all times have a remaining unexpired term of five (5) years," in which case "there shall be no further daily one (1) day extensions" and the Agreement will expire after five years.) Thus, despite Plaintiff's claim, the Distributor Agreement is no more "in limbo" now than it ever was. (Pl's Brief at 7.)

17

has already held that the Distributor Agreement "contractually requires all disputes to be submitted to Arbitration," and referred that matter, which also involves attempted termination of the Distributor Agreement, to arbitration.  (Brady Decl. ¶ 3, Ex. A, Nov. 25, 2019 Decision and Order in *Brook Beverage, Inc. v. Pepsi-Cola Bottling Company of New York, Inc.*, Index No. 0608862/2019, at 6-7.)  Accordingly, because Plaintiff cannot succeed on the merits, or even raise sufficiently serious questions as to make the merits a fair ground for litigation, Plaintiff's application for a TRO should be denied.

### ii.    The Balance of Equities Favors Defendant, not Plaintiff

Even if there were serious questions as to the merits of Plaintiff's claims, which there are not, a TRO also requires that "the balance of hardships tips decidedly in favor of the moving party." *Sterling*, 368 F. Supp. 3d. at 727.  Where, as here, Plaintiff's claims could be fully redressed with monetary damages, and the grant of a TRO "would cause harm to Defendants by delaying the resolution of this action and . . . such a delay would harm Defendants," this court has held "that the balance of hardships [does not] tip[] in [plaintiff's] favor, much less 'decidedly.'"  *Id.* at 729.

This is particularly true in the instant case, where Plaintiff's current situation is entirely of its own making.  The October 6, 2020 Notice of Proposed Termination would never have been issued had Plaintiff merely responded to one of the two *previous* requests PCNY had made in an attempt to determine who would be operating the Brook Beverage distributorship following the untimely death of Joseph Eliseo.  (GraBois Decl. ¶¶ 29-32, Exs. 5-7.)  Because of Vincent Eliseo's previous threat of violence, and the fact that he is currently barred from PCNY's premises by court order, PCNY has been attempting since at least August 14, 2020 to ascertain who will be operating the distributorship following Joseph Eliseo's death.  (*Id.*; Brady Decl. Ex. B.)  Plaintiff has ignored PCNY's communications for months, and now wishes to escape the consequences of that failure.

The fact that Plaintiff believes the parties can continue to operate in their current uncertain state indefinitely does not eliminate Defendant's express right to terminate the parties' Distributor Agreement for failure to comply with the transfer provisions therein.  "[T]hough the consequences of such a cancellation might be unfortunate, they commonly occur and must be anticipated by those who enter into agreements containing such termination provisions."  *Sharpe v. Great Lakes Steel Corp.*, 9 F.R.D. 691, 693 (S.D.N.Y. 1950).

Significantly, while Plaintiff contends that a TRO would place PCNY in "no worse position" than it stands today, courts have held that "a movant does not establish that the balance of hardships tips decidedly in its favor if the relief it requests would force its former supplier to endure an unsatisfactory relationship with a licensee it no longer trusts . . . ."  *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 196 (S.D.N.Y. 1990).  *See also Deltown Foods, Inc. v. Tropicana Prods, Inc.*, 219 F. Supp. 887, 891-92 (S.D.N.Y. 1963) ("The Court should hesitate before granting a preliminary injunction which would require 'defendants to indefinitely entrust the marketing of their product in a wide area to a distributor with whom a relationship of confidence and cooperation has become impossible.'")  As discussed, the sole surviving shareholder of Brook Beverage has been barred from PCNY's premises since June 28, 2019, pursuant to court order, after threatening workplace violence.  (Brady Decl. Ex. F.)  Expecting PCNY to maintain the *status quo*, without permitting Defendant to determine who is in charge of Brook Beverage's daily operations and approve same, violates the terms of the parties' Distributor Agreement, and poses a significant hardship to Defendant.

To the contrary, in the cases cited by Plaintiff, the courts granted temporary injunctive relief, because "[i]t [was] unlikely that Coca-Cola [would] suffer greatly if the eleven-year relationship [was] continued for a short while."  *Roso-Lino Bev. Distribs., Inc. v. Coca-Cola*

*Bottling Co. of New York, Inc.,* 749 F.2d 124, 126 (2d Cir. 1984)  *See also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) (finding the hardship to defendant in granting temporary injunctive relief "was relatively small"); *AIM Int'l Trading, LLC v. Valcuine SpA, IBI LLC,* 181 F. Supp. 2d 384, 388 (S.D.N.Y. 2002) ("Defendants on the other hand, have not shown how they would be damaged by the continuation of their relationship with plaintiffs for the short time associated with a temporary restraining order.").  Such is not the case here, where Brook Beverage's sole surviving shareholder poses a legitimate and lethal threat to the safety of PCNY's employees and other distributors, a threat that has been expressly acknowledged by court order.  Accordingly, expecting PCNY to maintain the *status quo* is untenable.

Further, Plaintiff's application for a TRO is premature, because a Transfer Application involving Brook Beverage's distributorship is currently in progress.  (Weitzman Decl. ¶¶ 4-5.)  In fact, the only current delay in the transfer process is being caused by Plaintiff, which has failed to provide several documents the purchaser needs to complete the Transfer Application.  (*Id.* ¶¶ 6-8.)  Until Plaintiff provides its portion of the required documentation, PCNY cannot evaluate the Transfer Application.  (*Id.* ¶¶ 4, 7.)  Defense counsel has even communicated directly with Plaintiff's counsel, in writing, as recently as November 6, 2020, encouraging Plaintiff to expedite this process, thus far to no avail.  (Brady Decl. Ex. H.)  Accordingly, because the instant application is premature, and the balance of equities favors Defendant, Plaintiff's application for a TRO should be denied.

## II.  THIS COURT MUST COMPEL ARBITRATION AND STAY THIS ACTION BECAUSE ALL OF PLAINTIFF'S CLAIMS ARE EXPRESSLY COVERED BY THE ARBITRATION PROVISION IN THE FEBRUARY 2, 1999 DISTRIBUTOR AGREEMENT

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution."  *Preston v.*

*Farmer*, 552 U.S. 346, 349 (2008).  A court must consider: (1) whether the parties "have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *Ameriprise Fin. Servs., Inc. v. Beland*, 672 F.3d 113, 128 (2d Cir. 2011).  Any doubt regarding whether the agreement to arbitrate encompasses Plaintiff's claims must be resolved in favor of arbitration.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) (holding that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including where, as here, "the problem at hand is the construction of the contract language itself").

The parties have entered into a valid agreement to arbitrate.  Plaintiff and Joseph Eliseo executed the February 2, 1999 Distributor Agreement and Plaintiff is bound by its terms, including its arbitration provision, as amended by the 1984 Agreement (GraBois Decl., Ex. 1, signature page).  Plaintiff's claims in its Verified Complaint (Notice of Removal, Ex. A, ECF No. 1-1) are within the scope of the agreement to arbitrate, as they relate to a dispute over Defendant's application of Paragraphs 16 ("Transfers") and 20 ("Termination by the Company") of the Distributor Agreement.  (Verified Compl. ¶¶ 19-32, ECF No. 1-1).  Plaintiff must be compelled to arbitrate its claims in the Verified Complaint.  *See* 9 U.S.C. § 4 (stating that "upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing parties to proceed to arbitration in accordance with the terms of the agreement").

### A.      Plaintiff Is Bound by the Arbitration Provision in the February 2, 1999 Distributor Agreement with Defendant

Plaintiff Brook Beverage executed the February 2, 1999 Distributor Agreement, which contains the following arbitration provision in Paragraph Eighth, amending Paragraph 22 of the 1979 Form Distributor Agreement:

Firm:51839147v1

> Any and all disputes or disagreements between the Company and the Distributor concerning the interpretation of application of the provisions of this Agreement, shall be determined in arbitration before Mr. William J. Glinsman, and judgment upon the award rendered by the said Arbitrator may be entered in any Court having jurisdiction.  In the event of the failure of Mr. Glinsman to act as Arbitrator for whatever reason, the person then acting as Arbitrator under the then collective bargaining agreement between the Company and the Soft Drink Workers Union, Local 812 I.B.T., shall act as his replacement until such time as the parties hereto shall designate in writing a substitute arbitrator for Mr. Glinsman.  In no event shall the Arbitrator have the power to alter or amend the terms of this Agreement.

(GraBois Decl., Ex. 1, signature page; Paragraph Eighth, Ex. B to Ex. 1 to GraBois Decl.)

Accordingly, Brook Beverage is bound by the above arbitration provision.  *See Vittoria Corp. v. N.Y. Hotel & Motel Trades Council*, 30 F. Supp. 2d. 431, 435-36 (S.D.N.Y. 1998) (finding that a corporation was bound by an arbitration agreement to which it was a signatory).

**B.     The February 2, 1999 Distributor Agreement Contains an Arbitration Provision that Encompasses Plaintiff's Claims of Breach of Contract**

The FAA evidences the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24; *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987).  The FAA applies in both federal and state cases, and it preempts inconsistent state law on the subject of enforceability of arbitration clauses.  *See Southland Corp. v. Keating,* 465 U.S. 1, 12 (1984). The presumption in favor of arbitration "direct[s] courts to abandon their hostility" toward arbitration and instead "respect and enforce agreements to arbitrate."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  Under federal law, "doubts as to arbitrability should be resolved in favor of coverage," and arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Genesco v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987).

Firm:51839147v1

Plaintiff should be compelled to arbitrate the claims in its Verified Complaint.  The relevant arbitration provision in Paragraph 22 of the February 2, 1999 Distributor Agreement (*see* ¶ 22 to Ex. A to Ex. 1 to GraBois Decl., as amended by Paragraph Eighth to Ex. B to Ex. 1 to GraBois Decl.) clearly encompasses Plaintiff's contractual dispute relating to the termination of its Distributorship under Paragraph 20 of the 1979 Form Distributor Agreement, attached as Exhibit A to the September 2, 1999 Distributor Agreement (*see* ¶ 20 to Ex. A to Ex. 1 to GraBois Decl.).

### 1.    The Present Dispute Concerns the "Interpretation of Application of the Provisions" of the Distributor Agreement

Paragraph Eighth of the 1984 Agreement, which is the applicable arbitration clause in this matter, states, in relevant part: "Any and all disputes or disagreements between the Company and the Distributor concerning the interpretation of application of the provisions of this Agreement, shall be determined in arbitration before Mr. William J. Glinsman . . . ."  (*see* ¶ 22 to Ex. A to Ex. 1 to GraBois Decl., as amended by Paragraph Eighth to Ex. B to Ex. 1 to GraBois Decl.)  Read literally, the arbitration clause contemplates three discrete events prior to arbitration: (1) an application of the provisions of the agreement; (2) an interpretation of that application; and (3) a dispute or disagreement between Defendant and Plaintiff over the interpretation of that application.

Here, Defendant applied its interpretation of Paragraphs 16 and 20 of the agreement and issued the October 6, 2020 Termination Notice to Plaintiff.  Plaintiff's interpretation of Paragraphs 16 and 20 differs from Defendant's application of those provisions.  Those differences are the basis for Plaintiff's claims in their Verified Complaint, which concern Defendant's alleged breach of Paragraphs 16 and 20 and alleged damages therefrom.  (Notice of Removal, Ex. A, Verified Compl. ¶¶ 8, 19-32, ECF. No. 1-1.)  Defendant disputes Plaintiff's choice of forum for the resolution of Plaintiff's claims and seeks to compel arbitration.  Given that Plaintiff's claims in this proceeding are clearly covered by the arbitration clause in the parties' February 2, 1999

Distributor Agreement (*see* ¶ 22 to Ex. A to Ex. 1 to GraBois Decl., as amended by Paragraph Eighth to Ex. B to Ex. 1 to GraBois Decl.), Plaintiff must be compelled to arbitrate the claims in its Verified Complaint.

Federal courts have held that the exact "interpretation of application" language that appears in Paragraph Eighth of the 1984 Agreement requires arbitration of substantive contract disputes. *See Bd. of Trustees v. Galvan & Brown Concrete Decking, Inc.*, No. 09-4215 CBM, 2010 WL 11526752, at *4 (C.D. Cal. Mar. 26, 2010) (concluding that the parties' agreement "clearly and unambiguously requires arbitration of all disputes 'arising out of the interpretation of application of the Agreement,'" and that "[t]his plain language compels arbitration"); *Edwards v. Virgin Islands*, No. 1981/271, 1986 WL 1265351, at *2-3 (D.V.I. Feb. 28, 1986) (compelling arbitration of dispute involving "the interpretation of application" of the parties' agreement, "in the absence of strong evidence or contract language to the contrary"); *United Steelworkers of Am. v. Keystone Group*, No. 109 LC 10,550, 1985 WL 14179, at *1-2 (S.D. Ind. Apr. 19, 1985) (compelling arbitration of termination dispute under "interpretation of application" arbitration clause); *Air Eng'g Metal Trades Council v. ARO, Inc.*, 307 F. Supp. 934, 935 (E.D. Tenn. 1969) (where agreement requires arbitration of any dispute involving the "interpretation of application of the provisions of this contract," "[i]t is incumbent upon such arbitration committee, and not the courts, to determine the issues"). New York courts have similarly held. *See City of Johnstown v. Local 779 Johnstown Fire Fighters Ass'n,* 43 A.D.2d 875, 874-875 (N.Y. App. Div. 1974) (compelling arbitration involving "interpretation of application" of contract); *Windsor Cert. Sch. Dist. v. Windsor Teachers Ass'n,* 75 A.D.2d 684, 684-85 (N.Y. App. Div. 1980) (same).

In addition, Plaintiff and Joseph Eliseo have been compelled to arbitrate a similar contractual dispute filed in New York State Supreme Court, Nassau County, which Plaintiff even

claims is "related," based on the arbitration provision in Paragraph Eighth of the 1984 Agreement. (*See* Brady Decl. ¶ 3, Ex. A, November 25, 2019 Decision and Order at 6 (holding the Distributor Agreement "contractually requires all disputes to be submitted to Arbitration").)

Based on the foregoing, this Court must compel Plaintiff to arbitrate its claims against Defendant in its Verified Complaint.

### C.     The Court Should Stay the Matter

The FAA provides that a federal court shall stay an action to resolve a dispute subject to an arbitration agreement as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Plaintiff's claims are "referable to arbitration" on their face, and this proceeding must be stayed.  *Porcelli v. JetSmarter, Inc.*, 19 Civ. 2537 (PAE), 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (granting motion to compel arbitration and staying proceedings); *Bynum v. Maplebear, Inc.*, 160 F. Supp. 3d 527, 534 (E.D.N.Y. 2016) ("If a court is satisfied that a matter is arbitrable under an arbitration agreement, section 3 of the FAA provides for a stay of legal proceedings.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' application for a temporary restraining order, compel arbitration and stay or dismiss the matter with prejudice.

Dated: Newark, New Jersey          EPSTEIN BECKER & GREEN, P.C.
       November 17, 2020

                            By: */s/ Patrick G. Brady*
                                   Patrick G. Brady

                                   875 Third Avenue
                                   New York, New York  10022
                                   (212) 351-4500

                                   and

                                   One Gateway Center, 13th Floor
                                   Newark, New Jersey  07102
                                   pbrady@ebglaw.com
                                   (973) 642-1900
                                   *Attorneys for Defendant Pepsi-Cola*
                                   *Bottling Company of New York, Inc.*

26