UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
BROOK BEVERAGE, INC.,                                     :
                                                          :
                                    Plaintiff,            :
                                                          :               20-CV-9275 (VSB)
                    - against -                           :
                                                          :            **OPINION & ORDER**
                                                          :
PEPSI-COLA BOTTLING COMPANY OF                            :
NEW YORK, INC.,                                           :
                                                          :
                                    Defendant.            :
                                                          :
--------------------------------------------------------- X

Appearances:

Steve Cohn
Jeffrey Howard Weinberger
Law Office of Steven Cohn
Carle Place, NY

*Counsel for Plaintiff*

Patrick G. Brady
Epstein Becker & Green, P.C.
Newark, NJ

*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Brook Beverage, Inc. ("Brook Beverage" or "Plaintiff") brings this action

against Defendant Pepsi-Cola Bottling Company of New York, Inc. ("Pepsi-Cola" or

"Defendant") for a declaratory judgment and permanent injunction.  Before me is Defendant's

motion to compel arbitration.  (Doc. 15.)  Because the arbitration clause at issue covers the

dispute between the parties, Defendant's motion to compel arbitration is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/25/2021

## I.   <u>Factual Background</u>

The full factual background and procedural history in this case can be found in my February 16, 2021 Opinion & Order ("February 16 O&O") granting Plaintiff's motion for a preliminary injunction, denying Plaintiff's motion to remand to state court, and holding in abeyance a determination on Defendant's motion to compel arbitration that is the subject of this decision. *Brook Beverage, Inc. v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, No. 20-CV-9275 (VSB), 2021 WL 568266 (S.D.N.Y. Feb. 16, 2011); *see* (Doc. 53.)  Plaintiff is a licensed distributor of Defendant's soft-drink products since the parties entered into a distribution agreement in 1968. (Doc. 1-1 ¶ 4.)  This distribution agreement has been modified several times over the years; the parties agree that the operative agreement is the one signed on February 2, 1999 (the "Agreement").  (*See* Doc. 21-1.)  The Agreement is between Pepsi-Cola Bottling Company of New York, Inc., "and Joseph V. Eliseo, an individual, Brook Beverage Inc., a New York corporation ('Distributor')."  (*Id.* at 2.)  Section 16 of the Agreement reads, in relevant part:

> So long as this agreement is in effect, the Company shall accept any substitute agent produced by the Distributor to take over and service the Territory in place of the Distributor and shall approve the assignment of this agreement to enter into a new agreement for the balance of the term hereof in the form then in use by the Company, with such proposed party provided, he or it shall, to the satisfaction of the Company, meet the requirements of the Company as to character, ability, financial responsibility, and adequacy of equipment to discharge the obligations assumed by the Distributor hereunder.  No approval of the transfer of the Territory shall be effective unless such approval, which approval shall not be unreasonably withheld, is in writing and is executed on behalf of the Company by an officer thereof.  This agreement is a personal one on the part of the Distributor, and except as hereinabove provided, the agreement may not be assigned in whole or in part and none of the obligations herein provided to be performed by the Distributor may be delegated to any other person.  No sale or transfer of stock of Distributor shall be made without the written consent of the Company.

(*Id.* at 8–9.)  Section 20 of the Agreement specifies Defendant's ability to terminate the Agreement if Defendant determines that Plaintiff "fail[ed] or refus[ed] to comply with one or

more terms of this agreement." (*Id.* at 10.)  The Agreement also contains the following

arbitration clause ("Clause"):

> Any and all disputes or disagreements between the Company and the Distributor
> concerning the interpretation of application of the provisions of this Agreement,
> shall be determined in arbitration before Mr. William J. Glinsman . . . In the event
> of the failure of Mr. Glinsman to act as Arbitrator for whatever reason, the person
> then acting as Arbitrator under the then collective bargaining agreement between
> the Company and the Soft Drink Workers Union . . . shall act as his replacement
> until such time as the parties hereto shall designate in writing a substitute
> Arbitrator for Mr. Glinsman.

(*Id.* at 25.)

Joseph Eliseo, founder of Brook Beverage, died on July 10, 2020.  (Doc. 13-1 ¶ 6.)

When he died, Joseph Eliseo owned 90% of Brook Beverage's shares, while his son Vincent

Eliseo owned the remaining 10%.  (*Id.*)  The core of the parties' dispute is whether Plaintiff has

violated Section 16 of the Agreement, either because it failed to inform Defendant for a period of

months following Joseph Eliseo's death about the ownership status of his shares, or because

Plaintiff has continued to operate the route despite the fact that Defendant has not consented to

any sale or transfer of Joseph Eliseo's shares.  *See Brook Beverage*, 2021 WL 568266, at *4–6.

Defendant argues that because Plaintiff violated Section 16 it can (1) terminate the Agreement

pursuant to Section 20, and/or (2) temporarily take over the route—and retain the accompanying

revenues—until Joseph Eliseo's will is probated and his shares are sold or transferred.  *See id.*

In an oral ruling on February 5, 2021, and the February 16 O&O fully laying out the

bases for that ruling, I granted a preliminary injunction preventing Defendant from terminating

the Agreement and/or temporarily taking over the route, as it had planned to do on February 8,

2021.  *See Brook Beverage*, 2021 WL 568266, at *9.  In that decision, I determined that Plaintiff

was likely to succeed on the merits of its claim in large part because Plaintiff had not violated

Section 16 of the Agreement, such that termination of the Agreement would be unlawful.  *See id.*

at *4–6.  However, I made clear that "my decision on [Defendant's] motion for arbitration will affect the scope of the preliminary injunction I ultimately order—namely, whether or not the injunction will lapse following a decision from an arbitrator or after further proceedings before me."  *Id.* at *8.

## II.    **Procedural History of Relevant Litigation**

Defendant filed its motion to compel arbitration on November 17, 2020, with a supporting memorandum of law and multiple declarations and exhibits.  (Docs. 15–21.)  On December 8, 2020, Plaintiff filed a memorandum of law in opposition, accompanied by a declaration and two exhibits.  (Docs. 35–36.)  Defendant filed its reply memorandum of law in support of its motion on December 18, 2020, along with a declaration and exhibits.  (Docs. 43–44.)  In my oral ruling granting Plaintiff's preliminary injunction, and in the February 16 O&O explaining that decision, I directed the parties to submit any additional materials necessary to decide Defendant's motion to compel arbitration, and to meet and confer beforehand to ensure that the materials were comprehensive but not repetitive.  *See Brook Beverage*, 2021 WL 568266, at *8; (Doc. 54, at 33-37).  The parties submitted these materials by email on February 16, 2021.

There are two separate pending state court proceedings in which Defendant has moved to compel arbitration pursuant to substantially similar or identical arbitration clauses as the one at issue here.  First, prior to the filing of the instant action, on May 31, 2019, Defendant issued a notice of termination to Plaintiff and Joseph Eliseo for reasons different than those raised in the instant action.  (Doc. 16-6.)  The New York State Supreme Court referred that case to arbitration. *Brook Beverage Inc. v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, No. 608862-19 (N.Y. Sup. Ct. Nov. 27, 2019), Doc. 60.  The appointed arbitrator subsequently determined that the dispute was

properly before him and that arbitration was the proper forum to determine whether Plaintiff had violated the Agreement.  Brook Beverage has moved to vacate the arbitrator's decision—a motion that Pepsi-Cola has opposed—arguing that the arbitrator exceeded his authority.  Second, in *4 J's Beverage, Inc. v. Pepsi-Cola Bottling Company*—a state court proceeding in which Defendant attempted to terminate the distribution agreement with another distributor—the New York State Supreme Court granted Defendant's motion to compel arbitration, leaving in place a temporary restraining order ("TRO") that continues until the conclusion of the arbitration.  No. 0032223/2019 (N.Y. Sup. Ct. Feb. 26, 2020), Doc. 39.

### III.   Legal Standard

In deciding motions to stay or compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks omitted).  Therefore, courts "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party."  *Id.* (citations omitted).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation of the arbitration agreement.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4).  The FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  A court must therefore determine:  (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of the arbitration agreement.  *In re Am. Express Fin. Advisors*

*Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).  If these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

## IV.    Discussion

As to the first issue, Plaintiff at certain points appears to acknowledge that the Agreement contains an arbitration clause, *see* (Doc. 35, at 3–5), but at one point in its briefing suggests that this dispute might concern "the threshold issue of whether there exists any agreement to arbitrate between the parties," (*id*. at 6) (quoting *Local 205 v. Day Care Council of N.Y., Inc.*, 992 F. Supp. 388, 393 (S.D.N.Y. 1998)).  Regardless of Plaintiff's position, the plain language of the Clause is clear that arbitration is required for at least some disputes, meaning that the parties have entered into a valid agreement to arbitrate.

Therefore, the issue to decide is whether this dispute—over whether Plaintiff violated Section 16 of the Agreement such that Defendant can terminate the Agreement pursuant to Section 20 and/or temporarily take over the route[1]—falls within the scope of the Clause. Plaintiff argues that referring disputes to arbitration regarding the "interpretation of application"

---

[1] Defendant insists that temporarily taking over the route does not constitute terminating the Agreement.  As I explained in my decision granting Plaintiff's preliminary injunction, I disagree, because Defendant taking over the route will force Plaintiff to lose a significant amount of revenue, employees, and potentially its entire business.  *See Brook Beverage*, 2021 WL 568266, at *6.  As such, I have found that either of Defendant's threatened actions would effectively terminate the Agreement.  *See id.*

of the Agreement's provisions means that the Clause applies "to deciding only whether the Agreement applies." (Doc. 35, at 4.) As support for this interpretation, Plaintiff notes that an earlier distribution agreement between the parties referred to arbitration disputes regarding the "interpretation *or* application," which was later changed to "interpretation *of* application" in the instant Agreement. (*Id.* at 3) (emphasis added). Given that the earlier version of the arbitration clause explicitly gave the assigned arbitrator authority over disputes concerning interpretation of the Agreement, Plaintiff argues, the subsequent change of one word in the contractual language necessarily narrows the arbitration clause's scope. (*See id.*) ("In all other respects the two versions are identical. Absent any other variance, the substitution must be presumed to have had a purpose: otherwise [Defendant] would have had no reason to modify [the arbitration clause] in the first place."); *cf. Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.") (internal quotation marks omitted). Plaintiff is wrong, and its arguments fail, for several reasons.

First, the plain meaning of the Clause strongly cautions against Plaintiff's reading. "Interpreting" is defined as "to explain or tell the meaning of," *Interpret*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/interpreting (last visited Feb. 25, 2021); "interpretation" is defined as "the act or the result of interpreting," *Interpretation*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/interpretation (last visited Feb. 25, 2021). "Application" is defined as "an act of putting something to use." *Application*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/application (last visited Feb. 25, 2021). Plaintiff's reading suggests that the Clause permits an arbitrator to determine only whether the Agreement should be used, but there is nothing in the Clause's text that indicates such a limited

reading.  If the drafters intended for the Clause to read as Plaintiff argues, they could have easily written that arbitration covers only disputes "over whether the Agreement applies."  The Agreement contains no such limitation.  It is more natural to read "interpretation of application" as covering not just whether the Agreement applies, but also how, or in what manner or capacity, the Agreement should be used.

Second, the Clause does not contain the phrase "interpretation of application of this Agreement," but rather "interpretation of application of the provisions of this Agreement."  (Doc. 21-1, at 25.)  If Plaintiff's reading were correct, there would be no need to include any language about the Agreement's "provisions," given that the arbitrator's sole task would be to determine "only whether the Agreement applies."  (Doc. 35, at 4.)  Plaintiff's reading therefore renders "part of the contract mere surplusage," *Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 158 (2d Cir. 2017) (internal quotation marks omitted), a result the Second Circuit "disfavor[s]," *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).  On the other hand, including the "of the provisions" language further demonstrates that the Clause tasks the assigned arbitrator with interpreting the Agreement's various provisions.

Third, Plaintiff's interpretation also would, in effect, render the Clause "a nullity—a position we cannot accept."  *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud*, 61 F.3d 8, 10 (2d Cir. 2015); *see also generally Thomas v. NASL Corp.*, No. 99Civ.11901 (JGK), 2000 WL 1725011, at *9 (S.D.N.Y. Nov. 20, 2000) ("Provisions in contracts should not be read in such a way as to make them meaningless."); *Jefferson Ins. Co. of N.Y. v. Travelers Indem. Co.*, 92 N.Y.2d 363, 370 (Ct. App. N.Y. 1998).  The vast majority of disputes between the parties will not concern whether the Agreement applies, but instead what the parties' responsibilities and obligations are under the Agreement.  Consequently, if I adopted Plaintiff's reading, the Clause

would have little to no practical function.  Further, as Defendant rightly notes, Plaintiff's interpretation would result in a bifurcated process—for every dispute, an arbitrator would first need to determine the threshold question of whether the Agreement applies, and then the parties would need to litigate in court.  (*See* Doc. 38, at 4.)  This is inefficient, makes no sense, and cannot be what the signatories meant when they agreed upon the Clause's wording.

Fourth, the broader reading of the Clause is consistent with and warranted by the fact that the Clause covers "[a]ny and all disputes," (Doc. 21-1, at 25), a sweeping construction that suggests a wide scope, *see, e.g.*, *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 88 (2d Cir. 2015) (noting that ERISA's preemption clause, which supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," is "expansive" and "broadly worded"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) ("The meaning of the first of these provisions is plain indeed:  any and all controversies are to be determined by arbitration.  The wording is inclusive, categorical, unconditional and unlimited."); *Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Local No. 80, Int'l Bhd. Of Teamsters*, 605 F.2d 1290, 1296 (2d Cir. 1979) (determining that "any and all disputes" is an "all-inclusive phrase").  Plaintiff's interpretation results in an artificially narrow reading of the Clause's scope.

Finally, recent precedent supports Defendant's position.  In *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, a case arising from the merger of two airlines Atlas Air, Inc. ("Atlas") and Southern Air, Inc. ("Southern") (together with Atlas, "Employers"), the Employers sought to compel arbitration of various grievances between themselves and the pilots' union.  943 F.3d 568 (2d Cir. 2019).  The Southern collective bargaining agreement ("Southern CBA") contained a provision that the Southern Board of Adjustment ("Southern Board") "shall have jurisdiction over disputes growing out of grievances or out of the interpretation of application of any terms"

of the agreement.  *Id.* at 574–75.  When Southern alleged that the union violated Section 1.B.3 of

the Southern CBA, the union asserted that such a grievance was "nonarbitrable."  *Id.* at 576.

The Second Circuit found that, under the Southern CBA provision, "Southern was entitled to file

a management grievance with the Southern Board regarding the interpretation of Section 1.B.3

of the collective bargaining agreement."  *Id.* at 585.  The Second Circuit, in other words, held

that the Board's authority to determine the "interpretation of application" of terms in the

agreement included the authority not just to determine whether the agreement applied, but the

meaning of the individual provision at issue.  This decision buttresses the conclusion compelled

by the Clause's plain meaning:  the Clause applies to the instant dispute between the parties.

     **V.**     <u>**Conclusion**</u>

     Accordingly, it is hereby:

     ORDERED that Defendant's motion to compel arbitration is GRANTED.

     IT IS FURTHER ORDERED that, in light is this ruling, the preliminary injunction

awarded to Plaintiff in this case, (Doc. 53), remains in effect until the assigned arbitrator issues a

decision, at which point the preliminary injunction will lapse.

     The Clerk's office is directed to close the open motion at Document 15.

SO ORDERED.

Dated: February 25, 2021
     New York, New York

Vernon S. Broderick
United States District Judge